276 So.2d 352 (1973)
Mrs. Annette BERTUCCI, wife of Joseph A. CENTINEO
v.
ANHEUSER-BUSCH, INCORPORATED.
No. 5380.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 1973.
Monroe & Lemann, Benjamin R. Slater, Jr., William J. Hamlin, New Orleans, for defendant-appellant.
Clark A. Richard, Metairie, for plaintiff-appellees.
*353 Before REGAN, STOULIG and BOUTALL, JJ.
REGAN, Judge.
Plaintiffs, Annette and Joseph Centineo, filed this suit against the defendant, Anheuser-Busch, Inc., endeavoring to recover $73,667.65 for personal injuries and medical expenses incurred by and on behalf of Mrs. Centineo when she was cut by fragments of flying glass which emanated from an explosion of a large bottle of Busch Bavarian beer.
Plaintiffs alleged that the bottle (1) had been delivered to the grocery store they operated by one of defendant's agents; (2) was carefully and properly handled at all times prior to the explosion after it came into their possession; and (3) exploded as Mrs. Centineo attempted to remove it from a cooler without any apparent cause.
Plaintiff then pleaded res ipsa loquitur.
Defendant answered and in effect generally denied the allegations of plaintiffs' petition. It then explained that the bottling process employed by the defendant was characterized by a "standard of care * * * such as to assure the exclusion of defective bottles and bottles too highly charged". In the alternative, the defendant pleaded that the contributory negligence of Mrs. Centineo in the handling of the bottle barred her recovery.
From a judgment awarding Mrs. Centineo $3,800.00 for pain and suffering, dismissing her husband's claim for medical expenses for lack of proof and assessing costs equally against plaintiffs and the defendant, the defendant has appealed.
Plaintiffs have answered the appeal requesting an increase in quantum and a reversal of that part of the decree assessing them with part of the costs.
The first issue raised by the defendant is the propriety of invoking the evidentiary rule of res ipsa loquitur. It is contended that the plaintiffs failed to establish those elements of proof that an injured party must adduce in order to make out a prima facie case in a bottle explosion situation. According to defendant, these are (1) that the bottle was in the exclusive control of the manufacturer; (2) that the cause of the explosion is not known to the plaintiff and (3) that the bottle was not improperly handled after it left the manufacturer's possession.
Thus we turn our attention to an examination of the testimony so as to ascertain whether plaintiff has made out a prima facie case.
The record discloses that the plaintiffs were owners of a small grocery store in New Orleans. On June 28, 1969, Mrs. Centineo was serving a customer who wanted to purchase a bottle of Busch Bavarian beer. She walked to the cooler where this brand of beer was kept, slid back the lid and reached into the cooler. Just as she picked up a quart bottle she heard an explosion. Within seconds she noticed her left arm bleeding profusely. She testified emphatically that she did not knock the bottle either against another bottle or the side of the cooler and she did not know why the bottle exploded. It should be pointed out that Mrs. Centineo, during interrogation indicated that she was not sure whether or not she touched the bottle before she heard the explosion; however, when questioned closely and repeatedly on this point, she said she was fairly certain she had picked up the bottle.
She was the only eyewitness to the explosion. Her husband and daughter were both in the store when the incident occurred. They both heard the noise and saw Mrs. Centineo bleeding immediately thereafter.
Joseph Centineo testified that he found the top part of the bottle with a Busch Bavarian cap still sealing the opening. The other fragments fell into the cooler and were ultimately washed out or fell to the floor and were swept out.
*354 He testified that the bottle that exploded was one of a case delivered by the "driver" and stacked on the floor of his grocery. The night before the accident, he had filled the cooler that contained Busch Bavarian beer exclusively. He said the bottles were placed on their sides and carefully stacked. It was established that either he or his wife were the only two persons to remove cold beer from the Busch cooler between the time it was filled and the moment the bottle exploded.
Defendant contends that this proof falls short of establishing a prima facie case in two respects, namely, (1) the witness to the accident vacillated as to how it happened and (2) there was no evidence which established that it was an agent of the defendant who delivered the bottle to the store.
Relative to Mrs. Centineo's testimony that she picked up the bottle before it exploded and at another point indicated she was not sure, we believe this is insufficient to discredit her account of the incident. She was positive that she did not knock a bottle against another bottle or against the side of the cooler and this is the crucial fact. Her statement on this point establishes the bottle did not explode because of an external blow.
Relative to the second alleged deficiency, it is true that none of plaintiff's witnesses referred to the driver as an employee of the defendant.
The implication and the whole tenor of the record leads us to the conclusion that the beer was delivered by an Anheuser-Busch truck. That it was in fact delivered by defendant's agent is established by virtue of a question propounded by defense counsel in examining Anderson Carter, Jr., an assistant supervisor employed by the defendant, who related that his duties consisted of inspecting the incoming boxcars and the loading of trucks in the New Orleans area. The question asked was:
"Would you please tell us the procedure used from the time the incoming boxcars or trucks come into New Orleans until the time they are put on the trucks to go out to the retail stores?" (Emphasis added).
We are convinced that the trial court correctly invoked the doctrine of res ipsa loquitur. It was proved that Mrs. Centineo was injured by an exploding bottle, delivered by one of the defendant's agents to the store and properly handled until the moment that it exploded. The extension of the doctine of res ipsa loquitur in bottle explosion cases to include offending instrumentalities not within the exclusive control of the defendant at the time the accident occurred was explained at length in Johnson v. Louisiana Coca-Cola Bottling Co.[1] as follows:
"No citation of authority is necessary to sustain the proposition that the sole purpose of the doctrine of res ipsa loquitur is to inferentially establish negligence on the part of defendant and for it to be applicable, the instrumentality which causes the injury must be under the exclusive control of the defendant, however, the doctrine has been extended, and reasonably so, to that class of cases where the instrumentality causing the damage is in the actual possession of the plaintiff, but is considered to be in the constructive control of the defendant, because sufficient proof has been adduced revealing that it is in the same condition as when it left the defendant's possession. Obviously, the prevailing jurisprudence of this State has placed bottle explosion cases in this category."
What constitutes a prima facie case sufficient to warrant the application of res ipsa loquitur has been discussed at length in our jurisprudence.[2] The arguments made herein by defendant were rejected in *355 the case of LaFleur v. Coca-Cola Bottling Co. of Lake Charles,[3] where the Court stated in part:
"Upon proof that a bottle has not been improperly handled after it left the possession of the bottling company, a plaintiff injured by the bottle's explosion has made out a prima facie case of negligence against the bottler. The reason for this is that it must be assumed that a bottle will not explode when properly handled unless there is some defect in the bottle or some improper charging or mixture of the contents. * * *
* * * * * *
"With considerable force counsel for the defendants-appellants suggests that the plaintiffs have not produced any proof ruling out possible mishandling of the particular bottle which exploded from the time it was delivered by the bottler up until the time of the explosion. * * *
* * * * * *
"Under the jurisprudence, therefore, for res ipsa loquitur to apply a person injured by an exploding bottle is not required to trace the history of that particular bottle from the moment it was delivered to the retailer until it explodes. It is sufficient that the injured person prove that he himself was free from fault and that no blow or dropping by him or by some third person caused the bottle to explode * * *; in short, it is sufficient for him to prove only that the bottle exploded from apparently unknown cause while or after being normally handled in an ordinary retail transaction." (Emphasis added).
To reiterate, we are convinced that the rule of res ipsa loquitur is applicable to the fact hereof; therefore, we next turn our attention to an analysis of the evidence presented by the defendant to rebut the presumption of negligence.
Dr. Barrett Scallet, a chemist employed by defendant for 34 years appeared to establish that the bottler was free from negligence. As an associate director of the Central Research Department, he explained one of his duties is to analyze broken bottles to determine the cause of breakage. He explained that bottles will break from one of three causes, i. e., thermoshock (a warm bottle may break when chilled); internal pressure; or impact breakage. He examined the remaining portion of the bottle that exploded in the Centineos' cooler and was emphatic in assigning the cause as impact breakage. The remaining portion that he examined had what is termed a "cone of percussion". This is a mark on the glass somewhat analogous to that left by a B.B. shot as it passes through a piece of glass. On the bottle surface where the glass is struck there is a small mark that widens out into a cone as it passes through the thickness of the glass. Scallet explained the narrowest point of the cone is always found at the point of impact and on the bottle he examined in the instant case, that point was on the outside of the bottle. It should be noted here that Dr. Scallet had examined only the remaining portion of the bottle estimated to be 20% of the whole. He was questioned as to whether the bottle could have first exploded and then hit another object in the cooler to produce the cone of percussion. He said this was possible but not probable. At one point in his testimony, after he explained he was responsible for examining all bottles that were returned to the defendant's St. Louis office after alleged explosions, the Court asked if he had ever concluded a bottle had broken from internal pressure. He said he had not. He has uniformly concluded that all exploding bottles he has examined blew up as the result of an external blow.
His testimony fails to rebut the presumption that the defendant was negligent in either bottling or shipping its finished produce.
Defendant urges its proof to rebut the presumption is equal to that offered in *356 Redmond v. Ouachita Coca-Cola Bottling Company,[4] wherein the court held the defense had successfully carried the burden of negating negligence in manufacture. We believe that case is distinguishable. First, the experts were able to recover fragments sufficient to reconstruct almost the entire bottle and second, they were not employees of the Coca-Cola Bottling Company. While Dr. Scallett explained there were three possible causes for explosion, we find it incredulous that he has at no time in his experience actually found the cause of "exploding bottles" to be anything other than impact breakage.
Finally, defendant argues that the quantum is excessive. We agree. As a result of the explosion, Mrs. Centineo was cut by flying glass. The only significant laceration was on the inside of the left arm opposite the elbow. It left a two inch scar that healed with a keloid formation. The excess tissue accentuates the scar and gives it a somewhat raised appearance. Mrs. Centineo complained of pain (like needles and pins) in the area and swelling of the left hand and arm. Dr. Louis Krust, her plastic surgeon, stated that the swelling was not related to the scar and the "needle and pin" sensation was possible but not probable. Her general practitioner felt the complaints of "needle and pin" pain was consistent with the injury.
Shortly after this accident, Mrs. Centineo had a mastectomy performed upon her, and the swelling hand may or may not be related to this operation. However, all medical testimony established that the swelling was not caused by the laceration to the arm.
Plaintiffs insist the award is inadequate. To support this position several cases have been cited wherein much higher awards have been given for scars.[5] But these were facial scars and, in our opinion, are not comparable because the cosmetic damage is much more devasting. Accordingly, we will reduce the quantum for pain and suffering from $3,800.00 to $2,000.00.
In taxing costs, the trial court ruled that the plaintiffs and the defendant should each pay half of the expert fees of the doctors. This is error. We are of the opinion that the defendant is liable for the costs of producing both medical experts since they were necessary to establish Mrs. Centineo's claim. Although plaintiffs failed to produce proof to support their claim for medical expenses, this omission has nothing to do with the taxing of expert fees. The experts were used to support Mrs. Centineo's claim and she prevailed.
For the reasons assigned, the judgment appealed from is amended to reduce the award to Mrs. Centineo from $3,800.00 to $2,000.00 and to tax expert fees against the defendant. In all other respects, the judgment appealed from is affirmed. Other than expert fees taxed against the defendant, each litigant is to pay his own court costs.
Amended and affirmed.
NOTES
[1] 63 So.2d 459, 463 (La.App.1953).
[2] See Ortego v. Nehi Bottling Works, 199 La. 599, 6 So.2d 677 (1942); Bonura v. Barq's Beverages of Baton Rouge, 135 So.2d 338 (La.App.1961) and cases cited therein.
[3] 195 So.2d 419 (La.App., 1966).
[4] 76 So.2d 553 (La.App., 1954).
[5] Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); and Derouen v. Allstate Insurance Company, 237 So.2d 88 (La.App., 1970).