| JOAN BERNARD ARMSTRONG, Judge.
This is a personal injury case. The plaintiffs were injured when their car struck a large, deep water-filled pothole. They sued the City of New Orleans and the Sewage and Water Board. After a bench trial, the trial court found that the accident was entirely the fault of the plaintiff who was driving and dismissed the claims against both defendants.
Several months after the trial court in the present case rendered judgment, the Supreme Court rendered a decision in a case very similar to the present case. Dupree v. City of New Orleans and Sewerage and Water Board of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002. Based upon the Dupree decision, which, of course, the trial court did not have the benefit of, we find that fault should be allocated 50% to the plaintiff who was driving and 50% to the defendants and, thus, we will reverse and render judgment accordingly.
Plaintiff Deborah B. Armstrong was driving on Old Gentilly Road in New Orleans. She was driving about 25 to 35 miles per hour. The weather was clear and it was daytime. Her minor daughter, Erin Armstrong, was a passenger.
Mrs. Armstrong’s car struck a water-filled pothole which was about eight feet wide, five feet across and one foot deep. Her car spun around, flipped over and _J¿anded in a ditch. Both Mrs. Armstrong and her daughter were injured.
Mrs. Armstrong testified that, because the pothole was filled with water, she thought it was a harmless puddle, and did not realize it was a pothole, until she “was right up on it”. The pothole was not marked with barricades or other warning devices. Thus, Mrs. Armstrong did not slow down or attempt to steer around the pothole. The next day, Mrs. Armstrong returned to the scene of the accident and photographed the pothole and, at trial, her photographs were introduced into evidence.
In the Dupree case, the plaintiff was driving in New Orleans when his vehicle struck a large water-filled pothole. He lost control of his vehicle and was injured. Because the pothole was filled width water, it appeared to be a puddle and the size and depth of the pothole were not visible. The Sewerage and Water Board was found liable due to its failure to properly mark the pothole with barricades. No comparative fault was allocated to the Dupree plaintiff.
In Dupree, the pothole was either marked with only one barricade, which was found to be inadequate, or was not marked with a barricade at all. In the present case, it is undisputed that the pothole was not marked with a barricade or any other warning device. In Dupree, the pothole was “completely” filled with water. In the present case, the photographs of the pothole show that it was not quite completely filled with water and, so, would be somewhat more recognizable as a pothole than was the case in Dupree. Even so, the bulk of the one-foot depth of the pothole in the present case was concealed by water. Under these circumstances, and in light of the Dupree decision, it was not correct to allocate 100% of the fault for the accident to Mrs. Armstrong. Having so found, we *693 must lower the allocation of fault to Mrs. Armstrong to the highest percentage that would be reasonable. Clement v. Frey, 666 So.2d 607 (La.1996). We find the greatest percentage of fault that can be attributed reasonably to Mrs. Armstrong is 50%.
It is readily apparent that a pothole, eight feet wide, five feet across and one foot deep, and filled with water, is unreasonably dangerous. La. Civ.Code art. 2317; Dupree, supra. However, both the City and the S & WB deny that they had custody of the pothole.
The City argues that, under Act 220 of 1962, Old Gentilly Road was made a part of the state highway system to be maintained by the State Department of Highways. However, Marvin Thompson, of the New Orleans Department of Streets, testified that, in fact, the City provided “maintenance and service” for the portion of Old Gentilly Road in question and that the City repaired potholes there. It is apparent that, under Dupree, the City had custody of the section of Old Gentilly road in question.
The S & WB argues that, because there is no evidence that it caused the pothole, and because it was not responsible for repair of the pothole, it did not have custody of the pothole. A S & WB Supervisor, Chris Fountain, tested the water in the pothole, and wet ground near the pothole, for the presence of chlorine. He did not detect chlorine in the pothole itself but did find “chlorine residual” on the wet ground near the pothole. Mr. Fountain said that this “tells us we did have a leak there, but the leak was basically on the top of the asphalt”.
Records of the Louisiana Office of State Climatologly were introduced into evidence which showed that there had been no rain in New Orleans for three weeks at the time of Mrs. Armstrong’s accident. S & WB claims investigator Newton Thomas
testified that a S & WB rainfall record showed that there was “some” rain during the month of November 1994 which was the month of Mrs. Armstrong’s | ¿accident. The S & WB rainfall record was not introduced into evidence, and was not even listed on the S & WB’s exhibit list, and Mr. Thomas’ testimony on this point was timely objected to by the plaintiffs counsel. We believe that the objection was well taken. The S & WB rainfall record was never qualified by testimony to meet the business record exception to the hearsay rule and so testimony based upon it was inadmissible. In any case, Mr. Thomas could not say how much rain fell in November 1994, not even whether it was more than a trace, and did not say whether the rainfall occurred prior to the date of Mrs. Armstrong’s accident or later in the month. The evidence clearly preponderates to the finding that there had not been any rain for three weeks before Mrs. Armstrong’s accident.
Based upon the results of Mr. Fountain’s tests for chlorine and the evidence indicating that there was no rain for three weeks prior to the date of Mrs. Armstrong’s accident, it appears most likely that, while a leak in a S & WB water pipe did not cause the pothole, such a leak filled the pothole with water running over the surface of the ground. Presumably, with the water in the pothole being older water, the chlorine in it had evaporated. With there having been no rain for three weeks prior to Mrs. Armstrong’s accident, there is no other explanation apparent for the pothole being filled with water. Thus, the S & WB water leak contributed to the hazard of the pothole by filling it with water so it was not as easily recognized as a pothole (as opposed to a harmless puddle) and so that the one-foot depth of the pothole was concealed.
Under the factual circumstances revealed by the record of this case, fault *694 should be allocated 50% to Mrs. Armstrong, who should have been able to see enough of the pothole to at least reduce her speed and decrease the severity of the accident, and 50% to the City and to the S & WB (25% to each) for the unreasonable ^danger posed by the very large, deep, water-filled pothole.
The record reflects that Mrs. Armstrong and her daughter suffered special damages of $9,173.28. As a result of the accident, Mrs. Armstrong suffered a broken nose and a strained neck which resulted in pain over some months. She was treated by two doctors. The neck strain aggravated and made painful a preexisting spondylosis, a degenerative condition. We award Mrs. Armstrong $4,000 general damages for the broken nose and $35,000 general damages for the neck injury. Erin Armstrong suffered soreness and bruising and, after being discharged from the emergency room, received no further medical treatment. Her symptoms resolved in about one week. We award her general damages of $1,500.
For the foregoing reasons, we reverse the judgment of the trial court and render judgment in favor of the plaintiffs as discussed above.

REVERSED AND RENDERED.