# COURT OF APPEAL, THIRD CIRCUIT

## 23-442


**RAVEN BOYANCE, INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILD RASHAWN BOYANCE**

**VERSUS**

**UNITED FIRE & CASUALTY COMPANY, ET AL**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 82216
HONORABLE LEWIS H. PITMAN, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**ELIZABETH A. PICKETT**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Elizabeth A. Pickett, Candyce G. Perret, and Sharon Darville Wilson, Judges.


**AFFIRMED.**

**Kraig T. Strenge**
**A Professional Law Corporation**
**Post Office Drawer 52292**
**Lafayette, LA 70502-2292**
**(337) 261-9722**
**COUNSEL FOR DEFENDANTS-APPELLANTS:**
 **Louisiana Fresh Fruits and Vegetables, LLC d/b/a Louisiana Fresh**
 **Produce, LLC**
 **United Fire and Casualty Company**

**David R. Rabalais**
**The Dill Firm**
**Post Office Box 3324**
**Lafayette, LA 70502-3324**
**(337) 261-1408**
**COUNSEL FOR DEFENDANTS-APPELLEES:**
 **Canal Insurance Company**
 **Clodhopper Trucking, LLC**
 **William Caldwell**

**Harry K. Burdette**
**The Glenn Armentor Law Corporation**
**300 Stewart Street**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
 **Raven Boyance, Individually and on**
 **Behalf of her minor child, Rashawn Boyance**

**PICKETT, Judge.**

Two defendants appeal a judgment against them awarding the plaintiff and her minor son damages for injuries they suffered in a three-vehicle accident. For the following reasons, we affirm the judgment.

## FACTS

On January 9, 2014, Raven Boyance was traveling west on Interstate 10 (I-10) from Breaux Bridge to Lafayette. Rashawn, her four-year-old son, was seated in his car seat on the passenger side of her truck. Shortly after Raven entered the highway, she noticed an eighteen-wheeler entering I-10 from the weigh station located between Breaux Bridge and Lafayette. Raven testified she applied her brakes and slowed her Dodge Dakota truck, stating it was "nothing frantic." She explained that seconds later she felt the impact of being hit from behind by a six-wheel box truck. Raven described the impact to her truck as "hard" and stated she felt like she had blacked out. She did not realize her truck had spun around and caught fire. Raven further explained the impact pushed her truck into and under the rear of the eighteen-wheeler. The eighteen-wheeler was owned by Clodhopper Trucking, LLC (Clodhopper) and driven by William Caldwell. The six-wheel box truck was owned by Louisiana Fresh Fruits and Vegetables, LLC d/b/a Louisiana Fresh Produce, LLC (Fresh Produce) and driven by Christopher C. Crain. Raven testified she would not have hit Caldwell if she had not been hit by the box truck.

When her truck came to a stop, Raven climbed out of the driver's side door window and attempted to rescue Rashawn from the burning truck but could not. Joe Robinson, the driver of another eighteen-wheeler traveling west on I-10, witnessed the accident and stopped to lend his assistance. Mr. Robinson was able to break the rear window where Rashawn was seated and cut him from his car seat

just before the truck exploded. Raven and Rashawn were injured in the accident and transported by ambulance from the accident to the hospital.

Trooper Timothy Breaux of the Louisiana State Police investigated the accident. Trooper Breaux testified that Mr. Crain's vision was not restricted. After conducting his investigation, Trooper Breaux concluded Mr. Crain was inattentive and following Raven too closely. Therefore, he could not slow his vehicle in time to avoid colliding with Raven's truck. Trooper Breaux cited Mr. Crain for careless operation. He did not cite Raven or Mr. Caldwell.

Raven filed suit against Mr. Crain; Fresh Produce; United Fire and Casualty Company (United Fire), the insurer of the box truck; Mr. Caldwell; Clodhopper; and Canal Insurance Company, the insurer of the eighteen-wheeler; to recover damages for the injuries they suffered in the accident. After some initial discovery was conducted, Clodhopper filed a motion for summary judgment, arguing no genuine issue of material fact existed with regard to Mr. Caldwell being at fault in causing the accident. The trial court granted the motion, and another panel of this court affirmed the judgment granting the motion for summary judgment. *Boyance v. United Fire & Cas. Co.*, 17-876 (La.App. 3 Cir. 3/28/18), 242 So.3d 745. Fresh Produce filed an application for writ of certiorari with the supreme court, which the supreme court granted and remanded the matter for further proceedings. *Boyance v. United Fire & Cas. Co.*, 18-886 (La. 10/8/18), 253 So.3d 1274.

The matter was tried to a jury from May 16 through May 22, 2022. At the conclusion of the trial, the jury rendered a verdict finding Mr. Crain 100% at fault in causing the accident and awarding Raven $1,520,000.00 in general damages and $135,046.00 in special damages and awarding Rashawn $125,000.00 in general damages and $8,779.45 in special damages. After the trial court entered a judgment in conformity with the jury's verdict, United Fire appealed.

2

# ASSIGNMENTS OF ERROR

In its appeal, United Fire assigns the following errors in the trial proceeding and the judgment:

1)   The trial court erred in allowing the competing experts to testify as to anything, whether or not referenced in their reports.

2)   The jury charge regarding La.R.S. 32:124 was incorrect as a matter of law, and therefore mislead the jury.

3)   The jury's finding of fact that Fresh Produce was 100% at fault was erroneous.

4)   The damages awarded herein were excessive and manifestly erroneous.

# DISCUSSION

## Expert Testimony

During the trial, an issue arose with regard to the anticipated trial testimony of Mr. Kenneth Carrick, Fresh Produce's accident reconstruction expert. The facts giving rise to the issue do not appear in the record. However, Raven's and Canal's attorneys assert the issue arose after they became aware during the trial that Mr. Carrick intended to present trial testimony that went beyond the opinions he stated in his expert report and pre-trial deposition. The trial court conducted an unrecorded in-chambers conference. After the conference, the trial court stated on the record:

> The Court as [sic] entertained an in-chamber conference with the attorneys regarding the testimony of experts. It is the Court's decision that the experts will be allowed to testify as to anything they wish to testify. I'm not going to put any restrictions on them as to what was in their report or not in their report. The expert for Louisiana Produce will go first, followed by the expert for Clodhopper Trucking. Mr. Strenge will be allowed to call under cross-examination Mr. Caldwell whenever he see[]s fit, before or after his expert goes on.

The trial court then asked the three attorneys if they understood the ruling. All three attorneys acknowledged they understood the ruling, and counsel for

Canal objected to the ruling. Counsel for United Fire responded, "That is my understanding, Your Honor, and I guess we should put on the record your ruling is in response to objections made by both of us with respect to the experts['] testimony on both sides." Thus, United Fire objected to the experts' testimony *before* the trial court considered the issue but did not object after the trial court made its ruling on the issue.

"To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony and state the reasons for the objection." *Kose v. Cablevision of Shreveport*, 32,855, p. 10 (La.App. 2 Cir. 4/5/00), 755 So.2d 1039, 1048 (citations omitted), *writs denied*, 00-1117 (La. 6/16/00), 764 So.2d 964, and 00-1289 (La. 6/16/00), 765 So.2d 340, respectively. Louisiana Code of Civil Procedure Article 1425 requires the subject matter on which an expert is expected to testify and the substance of the facts to which the expert is expected to testify to be disclosed through pre-trial discovery to promote fair trials and protect against trial by ambush. *Williams v. Gen. Motors Corp.,* 93-287 (La.App. 4 Cir. 2/11/94), 639 So.2d 275, *writs denied,* 94-1896, 94-1898 (La. 11/11/94), 644 So.2d 387, 388, respectively.

A party waives any objection to a witness or to the introduction of evidence he may have when the objection is not raised at a time when the error can be corrected. *Id.* United Fire did not make a contemporaneous objection to the trial judge's ruling regarding the expert's trial testimony and thereby waived its right to complain on appeal about the ruling.

United Fire also complains the trial court did not conduct the conference during which this issue was addressed on the record. However, there is nothing on the record showing the trial court rejected a request that the conference be conducted on the record. Moreover, counsel did not object during or after Mr.

4

Munyon's testimony. Nor did counsel ask for additional time to prepare his cross-examination of Mr. Munyon due to the alleged changes in Mr. Munyon's testimony and opinions. United Fire did not object to these alleged errors. This argument lacks merit.

***Jury Charge***

Counsel for Fresh Produce argues the trial court incorrectly instructed the jury on a driver's duty when entering a highway, asserting the trial court should have read La.R.S. 32:124 verbatim. The trial court instructed the jury:

> Under La.R.S. 32:124, a driver has a duty, in attempting to enter the interstate from the shoulder, to yield the right of way to all approaching vehicles so close as to constitute an immediate hazard. A motorist attempting to enter the highway from the shoulder of the road is held to the same standard of care as the motorist entering a highway from a private driveway. The motorist entering a highway from a private driveway has the primary duty to avoid a collision.
>
> When the vehicle immediately behind the merging vehicle does not impact the merging vehicle until being struck from behind, the lead vehicle did not fail to yield to "the approaching vehicles so close as to constitute an immediate hazard."
>
> Under La.R.S. 32:64(B), a driver has a duty not to drive at such a slow speed as to impede the normal and reasonable movement of traffic. It is just as inherently dangerous for a vehicle to move at an unreasonably slow speed on the highways as it is to travel at an excessive speed. Either of these factors can be a contributing cause to an accident.

United Fire complains the trial court's instruction improperly omits portions of La.R.S. 32:124 (emphasis added), which states:

> The driver of a vehicle about to enter or cross a highway from a **private road, driveway, alley or building, shall stop such vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across any alleyway or driveway, and shall yield the right of way to any pedestrian as may be necessary to avoid collision,** and shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard.

Specifically, United Fire argues the trial court's instruction misquoted the law because it omitted the bolded portions above and these omissions resulted in

the jury being misled. Pursuant to La.Code Civ.P. art. 1792(B), the trial court must instruct the jurors as to the law applicable to the case before them. *Adams v. Rhodia, Inc.*, 07-2110 (La. 5/21/08), 983 So.2d 798. In doing so, the trial court must prepare instructions that reduce the possibility of confusing the jury and may decide what law is and is not applicable. The jury instructions should "fairly and reasonably point out the issues" and "provide correct principles of law." *Id*. at 804. Trial courts have much discretion in preparing jury instructions, but they must see that only the correct law is provided to the jury. *Dobyns v. Univ. of Louisiana Sys.*, 18-811 (La.App. 1 Cir. 4/12/19), 275 So.3d 911, *writ denied,* 19-950 (La. 9/24/19), 278 So.3d 977. If an instruction was incorrect and the error likely contributed to the jury's verdict, the verdict must be set aside. "[T]he determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice." *Adams*, 983 So.2d at 804**.**

The trial court omitted portions of La.R.S. 32:124 that were not at issue herein, e.g., "alley or building," "a sidewalk . . . or sidewalk area extending across any alleyway or driveway," and "any pedestrian." It also modified the statutory language to include "highway" and "shoulder" and to point out that Mr. Caldwell had the "primary duty to avoid a collision." These omissions and modifications served to clarify for the jury how the provisions of La.R.S. 23:124 apply to the facts at issue. Therefore, the trial court did not err in making them.

United Fire next takes issue with the jury instruction that states, "When the vehicle immediately behind the merging vehicle does not impact the merging vehicle until being struck from behind, the lead vehicle did not fail to yield to the approaching vehicles so close as to constitute a hazard." According to United Fire, this provision "totally changed" the meaning of La.R.S. 32:124 such that "all approaching vehicles" would apply *only* to the "vehicle immediately behind a

6

merging vehicle." In making this argument, United Fire points out the cases cited by Raven and Clodhopper with facts similar to those herein involving four or more vehicles and concludes the trial court's instruction is erroneous and misleading. *See Maylen v. Great W. Cas. Co.*, 15-484 (La.App. 3 Cir. 11/4/15), 178 So.3d 302; *Petty v. State Farm Mut. Auto. Ins. Co.*, 06-1069 (La.App. 4 Cir. 2/7/07), 952 So.2d 767.

The vehicles involved in the accident here are Fresh Produce's box truck, Ms. Boyance's truck, and Clodhopper's eighteen-wheeler. Nothing in La.R.S. 32:124 or the jurisprudence applying it requires that four or more vehicles must be involved in an accident for this provision to apply. Furthermore, we point out that Mr. Robinson's testimony and Trooper Breaux's investigation establish that Mr. Robinson's eighteen-wheeler was traveling on I-10 behind the box truck and Raven's truck as Clodhopper's eighteen-wheeler began merging onto the highway. Mr. Robinson testified he saw Clodhopper's eighteen-wheeler merging onto I-10 and changed from the right lane to the left lane. By doing so, he avoided being involved in the accident.

Fresh Produce's truck was the third vehicle involved in the accident, but Robinson's eighteen-wheeler was the fourth vehicle in the right lane before the accident occurred. Raven and Mr. Robinson saw the Clodhopper eighteen-wheeler and acted timely to avoid an accident. Mr. Crain did not. We have considered the trial court's instruction on La.R.S. 32:124 in light of the facts of this case and the jurisprudence involving similar accidents and find the instruction is neither erroneous nor misleading. This assignment of error lacks merit.

***Assessment of Fault***

United Fire asserts the jury erred in not assigning fault to Mr. Caldwell. "The allocation of fault by the trier of fact is a factual determination that will not

7

be set aside by a reviewing court unless it is manifestly erroneous or clearly wrong." *Hankton v. State*, 20-462, p. 3 (La. 12/1/20), 315 So.3d 1278, 1282. Where there are two permissible views of the evidence, the factfinder's choosing one of them cannot be manifestly erroneous. *Stobart v. State, Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). Further, when the factfinder's findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands that great deference be given to the findings of fact. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

Before addressing this assigned error, we note United Fire did not address Mr. Crain's duty under La.R.S. 32:81(A), which provides a following driver has a duty not to "follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." A driver who hits a preceding vehicle is presumed to have breached the duty imposed by La.R.S. 32:81 and is presumed negligent. *Matherne v. Lorraine,* 03-2369 (La.App. 1 Cir. 9/17/04), 888 So.2d 244. Such driver is required to exonerate himself from fault in order to avoid liability. *Id.* This presumption of negligence does not preclude a favored motorist from being assessed with comparative fault if his conduct was negligent and contributed to the cause of the accident. *Id.*

Mr. Crain died before the trial, and no evidence presented at trial exonerated him from the presumption of fault imposed by La.R.S. 32:81(A). The only evidence on this issue is a one-sentence written statement Mr. Crain made after the accident during Trooper Breaux's investigation. Mr. Crain stated he was driving on I-10 when a white truck entered the highway and the vehicle in front of him stopped "which cause[d] me to hit the back of another vehicle." At the conclusion of his investigation, Trooper Breaux determined Mr. Crain was inattentive and

8

following too closely behind Raven and cited him for causing the accident. Trooper Breaux testified there was no evidence that Raven hit the eighteen-wheeler before her truck was hit by Mr. Crain. He explained no one at the accident stated there were two impacts. He specifically stated Mr. Crain did not tell him Raven's truck hit the eighteen-wheeler before he hit her.

Raven and Mr. Robinson observed Clodhopper's eighteen-wheeler as it merged onto I-10 and were able to avoid a collision. Their testimony was uncontradicted. Raven further testified without contradiction she would not have hit the eighteen-wheeler if Mr. Crain had not hit her truck. Based on Mr. Caldwell's testimony that he felt "two bumps" during the accident, Mr. Carrick opined that Raven hit Clodhopper's eighteen-wheeler before Mr. Crain hit her truck. United Fire seeks to reverse the jury's factual finding that Mr. Crain was solely at fault in causing the accident based on the conflicting witness testimonies and the conflicting expert opinions.

The testimonies of the parties and the witness driver conflict in some respects. The expert witnesses' factual bases for their opinions conflict in some respects with the parties' and witness driver's testimonies, as do their opinions. The jury was free to accept or reject each witness's testimony, assess their credibility, determine the plausibility of each party's theory as to how the accident occurred, and assess the fault of the parties. We find no basis to reverse the jury's assessment of fault.

### General Damages

United Fire assigns error with the jury's general damage awards to Raven and Rashawn, urging the awards are excessive and should be reduced. General damages are meant to return the plaintiff to the circumstances he was in just before his injury occurred. *Anderson v. State of Louisiana*, 18-01 (La.App. 3 Cir.

8/29/18), 258 So.3d 925. The assessment of general damages must include consideration of "the severity and the duration of the [injured party's] pain and suffering." *Guidry v. Allstate Ins. Co.*, 11-517, p. 14 (La.App. 3 Cir. 12/21/11), 83 So.3d 91, 102, *writ denied*, 12-225 (La. 3/30/12), 85 So.3d 121. "Pain and suffering, both physical and mental, refers to the pain, discomfort, inconvenience, anguish, and emotional trauma that accompanies an injury." *McGee v. A C And S, Inc.*, 05-1036, p. 5 (La. 7/10/06), 933 So.2d 770, 775. A plaintiff seeking an award for loss of enjoyment of life must show her lifestyle was detrimentally affected or that she had to forgo activities or pleasures she formerly enjoyed because of the injury. *Id.*, 933 So.2d 770. To establish she experienced a loss of enjoyment of life, a plaintiff must establish the nature and severity of her injury and how the injury affected her prior lifestyle. *Id.*

When reviewing general damage awards, appellate courts must first look to the individual circumstances of the case before it. *Kitts v. State Farm Mut. Auto. Ins. Co.*, 21-566 (La.App. 3 Cir. 5/25/22), 340 So.3d 1281. Furthermore, in reviewing a general damage award, courts review the entire damage award and not "a particular item in isolation," to determine if the award constitutes an abuse of discretion. *Pennison v. Carrol*, 14-1098, p. 14 (La.App. 1 Cir. 4/24/15), 167 So.3d 1065, 1078, *writ denied*, 15-1214 (La. 9/25/15), 178 So.3d 568. Only if the total general damage award is abusively high can it be disturbed. *Id.*

In *Pete v. Boland Marine & Manufacturing. Co., LLC*, 23-170 (La. 10/20/23), __ So.3d __ (2023 WL 6937381), our supreme court modified the process appellate courts must follow when reviewing general damage awards to require that the courts consider prior awards made to similar plaintiffs in similar situations along with the facts and circumstance in the case being reviewed. The court reaffirmed that appellate courts must determine whether the trier of fact

10

clearly abused its "much discretion" when awarding damages. *Id*. at __. Only when an abuse of discretion is found can appellate courts consider prior awards to determine an appropriate damage award. *Id.*

The jury awarded Raven and Rashawn general damages for mental anguish, pain and suffering, physical pain and suffering, and loss of enjoyment of life. Responding to United Fire's arguments that the jury's general damage awards are excessive, Raven asserts the jury was allowed to consider two additional components of general damages when awarding damages: (1) damages for the pre-impact fear they experienced during the accident; and (2) bystander damages for the fear they each suffered when seeing their loved one being injured and suffering in the accident.

United Fire argues Raven and Rashawn are not entitled to recover pre-impact damages for fearing they would die in the accident because they did not die. Damages for the fright, fear, or mental anguish a plaintiff suffers during the progression of an incident is legally compensable. *Carroll v. State Farm Ins. Co.*, 427 So.2d 24 (La.App. 3 Cir. 1983); *Dawson v. James H. Stuart & Deaton, Inc.,* 437 So.2d 974 (La.App. 4 Cir. 1983). The survival action provides for the recovery of damages for a victim's suffering from the time she was injured until her death. *Broussard v. Med. Protective Co.*, 06-331 (La.App. 3 Cir. 2/21/07), 952 So.2d 813. Raven and Rashawn did not die in the accident and continued to suffer fright, fear, and/or mental anguish after the accident. Therefore, cases involving survival damages are not applicable here.

Raven also asserts she and Rashawn are entitled to bystander damages as provided in La.Civ.Code art. 2315.6(A), which provides recovery of damages for mental anguish or emotional distress for a parent or child who witnesses an accident in which their child or parent is injured. To establish a claim for bystander

11

damages, the plaintiff must establish their loved one "suffer[ed] such harm that one can reasonably expect a person in the [plaintiff's] position to suffer serious mental anguish or emotional distress from the experience." La.Civ.Code art. 2315.6(B). The distress suffered must be "severe, debilitating, and foreseeable." *Id*. In *Trahan v. McManus*, 97-1224, pp. 11-12 (La. 3/2/99), 728 So.2d 1273, 1279 (footnote omitted), the supreme court opined bystander damages are "to compensate for the immediate shock of witnessing a traumatic event which caused the direct victim immediate harm that is severe and apparent, but not to compensate for the anguish and distress that normally accompany an injury to a loved one under all circumstances."

Raven watched and experienced the events unfold with respect to Rashawn, and Rashawn watched and experienced the events unfold with respect to Raven. Raven's fear and shock of the real potential that Rashawn might not be extricated from the truck before it became engulfed in flames clearly satisfies the initial requirement of La.Civ.Code art. 2315.6. Rashawn's fear of not being able to see Raven immediately after the truck came to rest then seeing her with burned hair and blood on her face satisfies the immediate harm requirement of La.Civ.Code art. 2315.6. Indeed, Raven testified she continues to experience nightmares in which she relives the accident and fears losing Rashawn. The same is true of Rashawn. Though he did not testify at trial, during the accident, he cried out to Raven for her help and was described as being in shock after the accident. He also frequently referenced the "fire" after the accident. Based on this evidence, the jury could have reasonably concluded Rashawn feared for Raven during the accident.

In *Cooper v. Patra*, 51,182 (La.App. 2 Cir. 2/15/17) 215 So.3d 889, *writs denied*, 17-476, 17-481 (La. 5/12/17), 219 So.3d 1104, 1105, the parents of a six-year-old child were each awarded $25,000.00 for bystander damages after their

daughter's heart was punctured during a procedure to drain fluid from around her heart, and one of the attending physicians ran to alert the parents of the problem and bring them to see their daughter. The parents described the ordeal as "traumatic" and testified they continued to re-experience the event. Adjusted for inflation as of the May 2022 trial date, using the U.S. Bureau of Labor Statistics Consumer Price Inflation Calculator,[1] this award was $30,000.00 at trial.

In *Smith v. Thomas*, 51,093 (La.App. 2 Cir. 1/25/17), 214 So.3d 945, a young girl was awarded bystander damages of $12,000.00 after witnessing her mother being struck by a car, knocked into a ditch, and rendered unconscious for one minute. The daughter did not talk about the accident, became unresponsive, and wanted to be alone. Adjusted for inflation, this award was $15,000.00 at trial.

Continuing our review, we now consider whether the jury's general damage awards are excessive.

### Raven

The jury awarded Raven general damages totaling $1,520,000.00, representing $230,000.00 for past and future mental and emotional anguish; $760,000.00 for past and future physical pain and suffering; and $530,000.00 for past and future loss of enjoyment of life. Raven described what happened to her during the accident. She stated her truck was hit so hard she blacked out and did not immediately realize her truck had spun around and was on fire. When she regained consciousness, she immediately checked on Rashawn. Raven testified that all she could see of him was his hand because everything was smashed into the passenger's side where he was in his car seat. She struggled to climb out of her truck door window and landed on her back as she did. She jumped up and ran around to the other side of the truck to get Rashawn, but his door was jammed,

---

[1] The CPI Inflation Calculator is located at https://www.bls.gov/ data/inflation_calculator. htm.

13

trapping him in the truck. The flames were increasing, and Raven could not see or reach Rashawn. She only heard him yelling, "Help me Mommy." Raven was helpless to save him on her own. She "freaked out." Mr. Robinson broke Rashawn's window, cut him from his car seat, and removed him from the truck. Immediately after Rashawn was in her arms, the truck exploded.

Only then did Raven realize her entire body was in pain. She and Rashawn were transported by ambulance to an emergency room where she learned she had a fractured nose. Some of Raven's hair was burned by the fire; she also had abrasions on her head, hip, and back from the concrete. Rashawn also had some abrasions, as well as pain in his foot and arm. After being released from the emergency room, Raven and Rashawn went home with her mother and lived there for three months. She could not work for four months.

When her pain and soreness continued after the accident, Raven sought treatment with Dr. Michel Heard, an orthopedist, for lower back pain that radiated into her left buttock with aching. Dr. Heard prescribed physical therapy and steroid injections for her back pain. The therapy and injections gave Raven minimal temporary relief, and Dr. Heard ordered an MRI that was negative for a herniated disc. Raven continued to have pain and consulted with Dr. Thomas Bond, a sports medicine physician. Dr. Bond initially prescribed therapeutic massages then ordered another MRI because Raven's pain continued. Thereafter, he did facet joint injections that improved Raven's pain by 20-30%.

Raven next saw Dr. Ilyas Munshi, a neurosurgeon. An MRI of Raven's back revealed a disc bulge at L5-S1 and significant narrowing of the nerve on both sides of the disc. Dr. Munshi performed a laminectomy and foraminotomy at L5-S1 in April 2018 to reduce the pressure on the nerves and in turn reduce Raven's chronic low back and leg pain. The procedure relieved some but not all of Raven's pain. At

14

trial, Raven continued to suffer with low back pain, muscle spasms, and soreness. Dr. Munshi testified that because Raven had no prior problems with her back and tried conservative treatment before resorting to surgery but continued to have lower back and leg pain so long after the accident and surgery, her pain would be permanent and she is more susceptible to additional injury.

Raven also sought treatment with Dr. Lyle Lecorgne, a clinical psychologist. Dr. Lecorgne first saw Raven in March 2016. Raven complained that her sleep was disturbed and not restorative and that she had nightmares and would awake in a cold sweat. She stated her nightmares were about danger and threats to herself and her children. She also complained of back pain and explained that on days she had to work eight hours, her pain was nine on a scale of one to ten. Dr. Lecorgne administered four diagnostic tests to Raven and diagnosed her with post-traumatic stress disorder (PTSD);[2] dysthymic disorder, which is defined as chronic low-level depression that is not as severe, but may last longer than a major depressive disorder;[3] and underlying anxiety disorder. He testified Raven has insecurity, anxiety, depressed mood, intrusive and distressing recall of the accident, loss of self-esteem, irritability, self-doubt, and insecurity about her future.

Dr. Lecorgne stated it was hard for Raven to regularly schedule medical appointments due to her employment as a store manager and the fact that she had to maintain her employment to support herself and her children. Dr. Lecorgne testified at trial it was clear to him Raven continued to suffer symptoms of PTSD, depressed mood, crying spells, sleep disturbance, and anxiety. which he related to

---

[2] United Fire contends Dr. Lecorgne's diagnosis is insufficient to support Raven's claim for damages for PTSD without citing jurisprudence supporting its claim. Courts, however, have accepted without question the diagnosis of PTSD by psychologists. *See Tisdale v. Hedrick*, 22-1072 (La. 3/17/23), 359 So.3d 484; *Delrie v. Peabody Magnet High Sch.*, 10-40 (La.App. 3 Cir. 6/2/10), 40 So.3d 1158.

[3] National Institute of Mental Health; https://www.nimh.nih.gov.

the uncertainty she faced with her emotional and medical futures. He found Raven to be "very honest, very candid, very forthright," and "truthful." He described her as downplaying her situation and doing what she had to do regardless of how she felt emotionally or physically.

When the accident occurred, Raven was a busy mother of two children, who lived with her.[4] She was twenty-three years of age and very active. She was employed as a manager at a Cato Fashions clothing store. In addition to work, Raven enjoyed bowling, shooting pool, exercising, being outdoors, traveling, and doing projects around her home.

At trial, Raven was thirty-one years of age and continued to work but could no longer enjoy these social activities as she had before the accident. She explained that in addition to her daily back and leg pain, she continued to suffer anxiety and depression and had trouble sleeping because her mind is occupied with fears of her and her children dying. The evidence established Raven also suffered (1) a fractured nose, which caused pain for two months; (2) painful burns and abrasions on her head, hip, and back that caused permanent discoloration and/or scarring; (3) continuing headaches and neck pain; and (4) a four-to-five-inch keloid[5] scar on her lower back.

### *Mental Anguish*

In *Tisdale v. Hedrick*, 22-1072 (La. 3/17/23), 359 So.3d 484, a young woman was accosted in a parking lot, threatened with a box cutter, and almost kidnapped in her own car. The plaintiff was able to jump from her car and run for help. The encounter lasted less than two minutes. She was diagnosed with PTSD.

---

[4] Raven had another child after the accident that interrupted her medical treatment for a period of time.

[5] "A keloid scar is a thick raised scar [that] can occur wherever there is a skin injury but usually forms on earlobes, shoulders, cheeks, or the chest." *See* https://www.mayoclinic.org.

16

The supreme court affirmed the trial court's award of $250,000.00 in general damages. In *Smith v. Tidewater Inc.*, 04-195 (La.App. 4 Cir. 3/2/05), 918 So.2d 1, *writs denied,* 05-2361, 05-2441 (La. 4/17/06), 926 So.2d 510, 513, respectively, the plaintiff seaman tripped and fell from a tug into the water off the coast of San Juan, Puerto Rico without the tug personnel noticing. The tug continued to its destination. The plaintiff was in the water for nearly twenty hours before being found ashore by Puerto Rican authorities. The trial court awarded a lump sum award of $250,000.00 for the plaintiff's PTSD and minor physical injuries, which was affirmed on appeal. Adjusted for inflation, this award was $378,000.00 at trial.

In *Henderson v. Nissan Motor Corp.*, 02-337 (La.App. 5 Cir.1/14/03), 835 So.2d 919, *rev'd on other grounds*, 03-606 (La. 2/26/04), 869 So.2d 62, the trial court awarded the plaintiff $90,000.00 for past mental anguish and $25,000.00 for future mental anguish. The plaintiff was injured in a motor vehicle accident and his fiancée was ejected from the vehicle and suffered severe injuries. Adjusted for inflation, these awards were $185,000.00 at trial. In *Moore v. Kenilworth/Kailas Properties*, 03-738 (La.App. 4 Cir. 1/7/04), 865 So.2d 884, *writs denied,* 04-348, 04-367 (La. 4/2/04), 869 So.2d 882, 883, the plaintiff was awarded $200,000.00 for mental anguish after suffering a serious neck injury which reduced his ability to continue doing activities and small jobs he did before his injury. Adjusted for inflation, this damage award was $315,654.00 at trial.

### *Physical Pain and Suffering*

United Fire cites *Williams v. City of Baton Rouge*, 02-682 (La.App. 1 Cir. 3/28/03), 844 So.2d 360, where the twenty-two-year-old plaintiff tripped and fell on a broken sidewalk that resulted in a ruptured lumbar disc that caused nerve root entrapment and required a lumbar laminectomy with discectomy at L5-S1. Plaintiff will suffer chronic back pain and radiating pain into her right hip and leg for the

rest of her life, with periodic severe exacerbations of that pain. The trial court awarded the plaintiff $165,000.00 in general damage, which the court of appeal found to be "conservative" but affirmed it. Adjusted for inflation, this damage award was $261,828.00 at trial.

In *Dauzatt v. Rapides Parish Police Jury*, 95-115 (La.App. 3 Cir. 6/7/95), 657 So.2d 484, *writ denied,* 95-1591 (La. 9/29/95), 660 So.2d 871, after an automobile accident, a teenager was diagnosed with mild disc bulges at C5-6, C6-7, L3-4, L4-5, and a disc herniation at L5-S1 that caused mild muscle tightness and tenderness and slightly restricted the range of motion in her neck and back. Fifteen months after the accident, the plaintiff had minimal tenderness in her neck and back and was not considered to be a surgical candidate. She controlled her pain with Tylenol and had no physical limitations. This court reduced the trial court's award of $350,000.00 for physical pain and suffering to $225,000.00. Adjusted for inflation, this award was $431,256.00 at trial.

In *Andrews v. Mosley Well Service*, 514 So.2d 491 (La.App. 3 Cir.), *writ denied*, 515 So.2d 807 (La.1987), plaintiff injured his back when he tried to avoid getting hit by a backing vehicle. His injury required surgical decompression at L3-4 with bone removal to prevent nerve root impingement. The plaintiff continued to suffer from stiffness and pain in the left side of his back and his left leg which was permanent. The plaintiff had residual physical limitations due to pain which limited his physical activities. He could no longer perform manual labor. He was awarded $400,000.00 in general damages. Adjusted for inflation, this award was $1,022,000.00 at trial.

*Boudreaux v. Farmer*, 604 So.2d 641 (La.App. 1 Cir.), *writ denied*, 605 So.2d 1373 (La.1992), affirmed the damage award of $600,000.00 for a young woman who suffered severe headaches, chronic neck pain, PTSD, and depression

18

after an accident that caused a prolapsed cervical disc at one level, which did not require surgery. Adjusted for inflation, this award was $1,251,000.00 at trial.

In addition to her back injury, Raven suffered a broken nose and injuries to her head and neck pain that caused pain for approximately six months. The plaintiff in *Armstrong v. City of New Orleans*, 00-2076 (La.App. 4 Cir. 12/5/01), 806 So.2d 690, *writ denied*, 02-939 (La. 5/31/02), 817 So.2d 103, was awarded 4,000.00 for a broken nose. Adjusted for inflation, this award was $6,500.00 at trial. In *Fox v. State Farm Mutual Automobile Insurance Co.*, 288 So.2d 42 (La.1973), the supreme court affirmed the jury's lump sum award of $25,000 for a painful whiplash injury that reduced the fifty-six-year-old plaintiff's ability to work. Adjusted for inflation, this award was $159,202.00 at trial. In *Lebato v. Safeway Insurance Co.*, 03-131 (La.App. 3 Cir. 6/4/03), 852 So.2d 446, the supreme court affirmed the jury's award of $20,000.00 for an injury that caused the plaintiff neck, back, and sacroiliac pain and spasms, together with sleep disturbances and depression for approximately four months. The plaintiff was under a doctor's care for two months during which she attended physical therapy. Thereafter, she continued the exercises at home for another two months. Adjusted for inflation, this award was $34,210.00 at trial.    In *Smith v. Early American Insurance Co. of Montgomery, Ala.*, 344 So.2d 397 (La.App. 1 Cir. 1977), a child was awarded $10,500.00 in damages for an injury to her lip that required stitches, a swollen ankle, and a two-and-a-half-inch keloid scar on her shoulder that required cortisone injections. Adjusted for inflation, this award was $51,582.00 at trial. The plaintiff in *Centineo v. Anheuser-Busch, Inc.*, 276 So.2d 352, (La.App. 4 Cir. 1973), was awarded $2,000.00 for a two-inch keloid scar. Adjusted for inflation, this award was $13,500.00 at trial.

*Loss of Enjoyment of Life*

The jury awarded Raven $150,000.00 for past loss of enjoyment of life and $380,000.00 for future loss of enjoyment of life. Whether Raven experienced a detrimental lifestyle change depends on both the nature and severity of her injury and her lifestyle prior to being injured. *McGee*, 933 So.2d 770.

In *Locke v. Young*, 42,703 (La.App. 2 Cir. 12/12/07), 973 So.2d 831, a twenty-two-year-old young man who sustained serious physical injuries that severely impacted his ability to engage in physical activities he enjoyed before the accident at issue was awarded $200,000.00 for loss of enjoyment of life. The second circuit observed: "Due to his youth, this loss of enjoyment will span a majority of his lifetime and result in deprivation or at least curtailment of many activities that he would have ordinarily been expected to enjoy." *Id.* at 847. Adjusted for inflation, this award was $278,000.00 at trial.

In *Asbahi v. Beverly Indus., L.L.C.*, 11-1202 (La.App. 1 Cir. 5/23/12), *writ denied,* 12-1309 (La. 9/28/12), 98 So.3d 842, a forty-nine-year-old mother whose ability to spend time with her family and travel was severely curtailed by the pain she suffered due to a neck injury was awarded $150,000.00 for loss of enjoyment of life. Adjusted for inflation, this award was $190,780.00 at trial. In *Farmer v. Patrician SLP, L.L.C.*, 43,601 (La.App. 2 Cir. 10/1/08), 997 So.2d 578, *writs denied,* 08-2606, 08-2613 (La. 1/9/09), 998 So.2d 724, 725, the fifty-two-year-old male plaintiff with two adult sons was awarded $100,000.00 for loss of enjoyment of life. He suffered severe injuries to his arms and hands when he fell from a second-floor balcony. Before the accident, he was a very active outdoorsman who enjoyed hunting, fishing, hiking, water skiing, and snow skiing but could no longer enjoy these activities due to his injuries. Adjusted for inflation, this award was $140,000 at trial.

United Fire seeks to reduce the jury's awards based on each category of damages awarded. We note, however, that no cases cited by the parties involve facts similar to those herein where a mother and her child were involved in a serious accident in which their vehicle caught on fire, and they escaped only moments before the vehicle exploded in flames. Moreover, we remain mindful that individual awards are not considered in isolation of the entire general damages award. We find the awards to Raven are not excessive.

### *Rashawn*

Rashawn was four years old when the accident occurred. He was strapped in his car seat, when their truck was hit from behind, spun around in the middle of I-10, hit a tractor-trailer, caught on fire then came to rest in the middle of I-10. He was trapped in the truck, and Raven could not reach him. Strangers worked to rescue him from the burning truck. Mr. Robinson cut Rashawn free from his car seat and told him, "Son, if it blows, I'm going with you. I'm not going to leave you hear." This statement, meant to assure Rashawn he would not be left alone, may well have increased his fears. The exigency of the situation was accentuated when "the tires started blowing," as Rashawn was being lifted from the truck, and the burning flames "burst harder," just after he was removed from the truck.

The testimony of Raven and her mother, Elissa Boyance, and medical records of Dr. Heard and Dr. Kenneth Bouillion, a child psychologist, established Rashawn suffered the following as a result of the accident: 1) fear and fright for his life and mental anguish; (2) night terrors and nightmares for several years; (3) painful burns and abrasions on his face that healed without medical treatment but left a keloid scar near his ear; (4) a swollen arm that caused him pain for a few months; (5) a swollen leg that caused him pain and to limp for a few months; and (6) bed-wetting at night that still occurred occasionally at the time of trial.

Ms. Boyance described Rashawn as being in shock immediately after the accident. He did not want to speak, was very quiet, and continuously held his toy car. She and Raven testified Rashawn started bed-wetting during his sleep, woke up with night terrors, roamed the house in his sleep, and talked about the fire over and over, like it was "the only thing." Ms. Boyance described Rashawn as being in his own world. Although Rashawn received medical treatment to address his bed-wetting, the treatment did not work, and at the time of trial, he continued bed-wetting occasionally. The jury awarded him $125,000.00 in general damages for past physical pain and suffering, loss of enjoyment of life, and past mental anguish.

In *Seals v. Shelter Insurance Cos.*, 39,252 (La.App. 2 Cir. 3/2/05), 894 So.2d 1259, the court affirmed an award of $75,000.00 in general damages to a young girl who was injured when the truck in which she was riding flipped. The plaintiff suffered broken teeth, cuts, scrapes, and bruises to her face and knees which resolved within six months of the accident. She also suffered post-concussive syndrome, fear, anxiety, and nightmares, which were not resolved with treatment. Her sister died in the accident. Adjusted for inflation, this award was $119,000.00 at trial.

In *McCain v. Howell*, 06-1830 (La.App. 1 Cir. 9/14/07), 971 So.2d 323, *writ denied,* 07-2027 (La. 12/14/07), 970 So.2d 533, the child plaintiff who suffered limited physical injuries in an automobile accident but also suffered nightmares for five to six months after accident and had to repeat kindergarten due to his emotional state was awarded $15,000.00 in damages. Adjusted for inflation, this award was $20,685.00 at trial.

As discussed above, the child plaintiff in *Early*, 344 So.2d 397, was awarded $10,500.00 ($51,582.00 at trial) in damages for an injury to her lip that required stitches, a swollen ankle, and a keloid scar on her shoulder that required cortisone

22

injections, and the plaintiff in *Centineo*, 276 So.2d 352, was awarded $2,000.00 ($13,500.00 at trial) for a two-inch keloid scar on her arm.

In *Smith*, 214 So.3d 945, a young girl was awarded bystander damages of $12,000.00 after witnessing her mother being struck by a car, knocked into a ditch, and rendered unconscious for one minute. The daughter did not talk about the accident, became unresponsive, and wanted to be alone. Adjusted for inflation, this award was $15,000.00 at trial.

United Fire urges Raven did not present sufficient evidence to substantiate the jury's damage awards to Rashawn because he did not testify at the trial. We do not agree. *See Turner v. Lyons*, 03-186 (La.App. 4 Cir. 1/28/04), 867 So.2d 13, *writ denied,* 04-741 (La. 5/14/04), 872 So.2d 530, and *Pryor v. United Servs. Auto. Ass'n*, 98-1371 (La.App. 4 Cir. 2/10/99), 729 So.2d 658, *writs denied,* 99-686, 99-701 (La. 4/30/99), 741 So.2d 16, 17, where the courts affirmed damage awards for children who did not testify at trial. The awards were supported by the testimony of family members and/or medical testimony or records.

For the reasons discussed herein, we find the jury's award of $125,000.00 in general damages to Rashawn is not excessive.

## DISPOSITION

For the reasons set forth herein, the jury's general damage awards of $1,520,000.00 in favor of Raven Boyance and $125,000.00 in favor of Rashawn Boyance are affirmed. All costs are assessed to United Fire and Casualty Company and Louisiana Fresh Fruits and Vegetables, LLC d/b/a Louisiana Fresh Produce, LLC.

**AFFIRMED**.